UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOHN ANGEL SALCIDA,
CDCR #F-04429,

                                Plaintiff,

                vs.

JONATHAN P. COTA, et al.,

                                Defendants.

Case No.  25-cv-3779-CAB-BJW

**ORDER SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A(b)(1)**

Plaintiff John Angel Salcida, a state inmate incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding pro se with a civil rights complaint pursuant to 42 U.S.C. § 1983.  [Doc. No.  1 ("Complaint).]  Plaintiff has paid the civil filing fee.  [Doc. No. 5.]

**I.      SCREENING PURSUANT TO 28 U.S.C. § 1915A**

**A.      Standard of Review**

The Court must conduct an initial review of the Complaint under 28 U.S.C. § 1915A, which "mandates early review before docketing or as soon as practicable after docketing for all complaints in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir.

- 1 -

2016) (cleaned up) (quoting 28 U.S.C. § 1915A(a)). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if it (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (cleaned up) (quoting 28 U.S.C. § 1915A(b)).

Screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "The Rule 12(b)(6) standard requires a complaint to 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B.    Allegations in the Complaint

Plaintiff states that "she suffers from mental health depression, dissociative personality, severe depression, PTSD, and has gender dysphoria, and wears correction vision Rx glasses and has glaucoma and hearing impairments." [Doc. No. 1-2 at 2.] She alleges that in October 2023, she was hired as inmate day laborer ("IDL") at the rate of one dollar per hour for a seven and one-half hour shift five days a week. [*Id.* at 3.] She further alleges that Defendants RJD Correctional Officer Sanchez, Civilian Senior Supervisor for Inmate Labor Tito, and Civilian Supervisor for Inmate Labor De Velasco were aware that Plaintiff is a transgender inmate with Enhanced Outpatient ("EOP") and Americans with Disabilities Act ("ADA") disabilities. [*Id.*] After her first day of work, Plaintiff alleges that Sanchez, Tito and De Velasco refused to call her to work, telling her she was not needed despite allowing volunteers to work, in retaliation "for Plaintiff leaving for 30

minutes to two hours to report to her mandatory medical and mental health priority appointments." [*Id*.]  In January and February of 2024, Plaintiff filed inmate grievances complaining she had not been paid for 156 hours of work in December and 154 hours of work in January.  [*Id*.]  As a result of those grievances, Sanchez, Tito and De Velasco "got in trouble" for not paying Plaintiff and not calling her to work.  [*Id*.]  As a result of a separate staff complaint filed by Plaintiff, an investigation found these Defendants were discriminating against Plaintiff and violating her ADA rights, were falsifying timecards, and were submitting "cooked payroll sheets."  [*Id*.]

Defendant RJD Associate Warden J. Lewis granted a grievance and Plaintiff received her back pay, but it was taken back at the request of Tito and De Velasco.  [*Id*. at 4.]  As a result of the grievance, the "other workers could no longer get paid if they didn't actually work," and Plaintiff was threatened and pushed around and called a snitch by the other inmate workers who had been told by Tito and De Velasco that she had filed the grievance.  [*Id*.]  Plaintiff asked Tito and De Velasco why they had told the other workers about the grievance, and they replied by calling Plaintiff "a fagging snitch."  [*Id*.]  During October, November and December 2024, all the workers were told to stand in front of work change so cameras could see them sit for two hours, and they were all paid for seven and a half hours, except Plaintiff.  [*Id*. at 5.]  When she asked Tito and De Velasco why other workers were getting paid even though there was no work and why she was denied the same treatment and benefits as other workers, they said "they didn't work with transgenders and crazy people in EOP."  [*Id*. at 4.]

Plaintiff filed a new grievance in May 2024, "reporting the retaliation and staff misconduct" and complaining of the reversal of the order for back pay.  [*Id*.]  She reached out to an accounting technician who said, "they didn't owe the plaintiff any explanations or notice."  [*Id*.]  In June 2024, J. Lewis told Plaintiff she "was not getting pay for getting Tito and J. Sanchez in trouble when plaintiff had snitch[ed] on the pay [scheme], and if plaintiff keep[s] pushing the issue plaintiff would regret it and get transfer[ed]."  [*Id*.]  On August 2, 2024, following the denial of several inmate grievances, J. Lewis held a non-

recorded classification hearing "to place plaintiff on a retaliatory transfer." [*Id*. at 5.] Plaintiff was told by J. Lewis and Defendant RJD Correctional Counselor Gomez that she should not have filed grievances against staff reporting that she was not getting paid, and now that her "snitching has gotten staff in trouble," she "had to go." [*Id*.] Plaintiff asked if this was in retaliation for exercising her First Amendment rights and being a witness for her cellmate inmate Murillo, and J. Lewis responded: "I don't give a shit if it's retaliation of not!!! One more 602 from you or Murillo you're gone, and get it through your head you're not getting paid." [*Id*.] On August 9, 2024, Plaintiff was issued a false and retaliatory Rules Violation Report ("RVR") by Defendant Facility C EOP Mental Health Recreational Therapist Asfar and RJD Sergeant Mercado "for alleged behavior that could lead to violence and that plaintiff had requested a personal favor." [*Id*.]

On September 20, 2024, Defendant RJD Correctional Counselor Cota informed Plaintiff that two chronos had been issued which were being used to transfer her and remove her from her job, but they were not issued to her. [*Id*. at 6.] Plaintiff claims J. Lewis and Gomez "with retaliatory intent falsified the plaintiff's placement score." [*Id*.] Plaintiff told J. Lewis, Gomez and Cota to correct the score, but Cota said Lewis and Gomez told him not to correct the points, and J. Lewis and Gomez told Plaintiff to deal with it at her new institution. [*Id*.] On October 14, 2024, those actions were voided, and Plaintiff was not transferred and the RVR was dismissed. [*Id*. at 6-7.] In claims one and two of the Complaint, which Plaintiff combines, she alleges all the Defendants named in the Complaint, including J. Lewis, Gomez, Cota, Sanchez, Tito, De Velasco, Asfar and Mercado, as well as the remaining listed Defendants, RJD Correctional Sergeants Flores and Morphin, RJD Correctional Lieutenant Cervantes, RJD Correctional Officers Hernandez and Amaya, RJD Correctional Captain Alexander, Psy Wong, Psy M. Lewis, the California Department of Corrections and Rehabilitation ("CDCR"), and John Does 1-12, violated her First Amendment right to be free from retaliation, her Eighth Amendment right to be free from cruel and unusual punishment, and her rights to equal protection, due process and fair notice. [*Id*. at 3.]

- 4 -

25-cv-3779-CAB-BJW

In claim three Plaintiff alleges violations of the Seventh Amendment, the Takings Clause of the Fifth Amendment, her rights to due process and fair notice, and violations of the ADA and Rehabilitation Act ("RA") against Defendants J. Lewis, Sanchez, Tito, De Velasco and CDCR. [*Id*. at 7.] Plaintiff alleges that she and the other inmate workers in Facility C were required to meet at work change and be escorted to the work site on another yard, and that either Sanchez, Tito, De Velasco or another civilian supervisor would wait for them and call them to work. [*Id*.] She alleges that "Facility C IDL workers were given small projects from October 2023 to the end of January 2024 and in February and March 2024 the plaintiff was not called for work because defendants J. Sanchez and Tito along with De Velasco would tell other IDL workers that they didn't want EOP mental health inmates or transgenders working for them." [*Id*.] They told her that her status as a transgender and EOP was incompatible for work but not to worry about reporting to work as she would still be paid. [*Id*. at 7-8.] Plaintiff refused to allow herself to be discriminated against and asked Hernandez and Defendant Paudilla, who is not identified or listed with the other Defendants, where on the yard she could go to report to work, and she would report there even if she was not called to work. [*Id*. at 8.] Plaintiff states that she "was the only ADA EOP-mental health/gender dysphoria-transgender IDL worker in the entire prison," and was discriminated against on that basis and not paid in retaliation for reporting that she was not being called for work. [*Id*.] She alleges Sanchez, Tito and De Velasco used a false and backdated chrono to claim she had not worked, that they had the trust office reverse the pay reimbursements for December 2023 and January 2024 without notice or cause, and that J. Lewis denied her grievance on the issue. [*Id*. at 8-9.]

Plaintiff alleges in claim four that Sanchez, Tito and De Velasco violated her First and Eighth Amendment rights to be free from retaliation and cruel and unusual punishment. [*Id*. at 9-11.] She alleges they were instructed by J. Lewis, Gomez and Garcia to backdate a counseling chrono stating that she did not report to work in order to avoid paying her and help justify a transfer in retaliation for reporting the staff misconduct which led to the investigation into accounting and payroll practices. [*Id*. at 10-11.]

25-cv-3779-CAB-BJW

Plaintiff alleges in claim five, against all Defendants, that her First and Eighth Amendment rights to be free from retaliation and cruel and unusual punishment were violated in relation to a hunger and water strike she and her cellmate started on December 9, 2024, to protest the retaliation. [*Id*. at 11-12.] She alleges Cervantes, Flores, Morphin and Hernandez were obligated to report the strike but refused to issue a hunger strike chrono after she missed nine meals which "would have given the plaintiff daily medical care and treatment," in order "to avoid plaintiff's complaint being documented so that plaintiff's retaliatory transfer would not be discovered." [*Id*. at 12.] She and her cellmate went "man down to get medical attention," and on December 12, 2024, the hunger strike chrono was issued. [*Id*. at 12-13.] Flores and Hernandez falsely claimed Plaintiff and her cellmate had consumed food, which officially ended the strike under prison regulations, because they knew if the strike had lasted another day they would have had to interview her and report the hunger strike to Sacramento. [*Id*. at 13.] Plaintiff went man down on December 14, 2024, because she felt weak with headaches and high blood pressure "but had to refuse treatment" because Flores told her and her cellmate that if they received medical treatment or accepted transport to an outside hospital their property would be missing. [*Id*. at 14.] Cervantes and Morphin told Plaintiff that the hunger strike would not stop her transfer, and that she "was just pissing off people." [*Id*.] Plaintiff had a friend email the warden's office and an undersecretary and director of adult high security housing, resulting in Plaintiff ending the hunger strike after speaking to Alexander who said she would look into the allegations regarding the placement points and transfer chrono. [*Id*.] On January 30, 2025, Alexander told Plaintiff that Garcia and Cota were right about her points, and she would still be transferred. [*Id*.] Garcia told Plaintiff the next day that Cota would take her back to committee and she would not be transferred, but they did not want her back at her job due to the inmate grievances she had filed. [*Id*.] As of February 24, 2025, Cota had not taken her to committee or corrected her points. [*Id*.]

Plaintiff alleges in claim six, against Defendants Wong, M. Lewis, Asfar, Amaya and John Does 1-12, an Eighth Amendment denial of medical care claim and a First

25-cv-3779-CAB-BJW

Amendment retaliation claim. [*Id*. at 17.] Plaintiff states that she and her cellmate filed an internal affairs complaint against those Defendants after observing them "being sexually inappropriate" with each other. [*Id*.] On September 3, 2025, Plaintiff reported to Wong that she was feeling suicidal and Wong, in retaliation for filing the complaint, responded by saying: "I'm taking you to IDDTT to remove you from EOP." [*Id*.] Amaya searched Plaintiff's cell 19 times in August 2025, 10 times in July 2025, and 18 times in June 2025, "so I could learn not to snitch." [*Id*.] On September 6, 2024, Plaintiff informed Wong and M. Lewis she was suicidal and had just injected cellblock cleaner, but a John Doe laughed, and M. Lewis said: "I will bury you." [*Id*. at 18.]

Finally, in claim seven, brought against Defendants Gomez, Cota, Cervantes, J. Lewis, Wong, Amaya, Sanchez, Asfar, Flores, Garcia, Morphin and De Velasco, Plaintiff alleges claims for "gender discrimination, gender ADA violations, violations of equal protection and due process, 1st Amendment for the retaliation and 8th Amendment as both health and mental health [falsified documents, falsify a government document, falsified points, disciplinary record)." [*Id*.] She alleges that on September 16, 18 and 23, 2025, Cota informed her that she would be transferred. [*Id*.] On August 2, 2025, Plaintiff pointed out that her points and disciplinary history were wrong on the transfer chrono but was told it would be handled by her receiving institution, and on October 2, 2025, was told she would be taken to committee concerning the transfer. [*Id*.] She alleges Gomez, Garcia, Flores and Cervantes fabricated a false disciplinary history and Sanchez generated a false chrono at the request of De Velasco resulting in the 37-day hunger strike during which Morphin failed to follow prison policy and alert staff. [*Id*.] She claims that Tito, De Velasco and an unidentified person named Arrellano owes her back pay. [*Id*.]

### C.   Discussion

### 1. First Amendment Retaliation Claims

Plaintiff alleges she was retaliated against for filing an inmate grievance about not being paid, filing a staff complaint about not getting work, filing a staff complaint about staff sexual misconduct, for leaving work to attend mandatory medical and mental health

appointments, and based on her status as a transgender and EOP inmate. [Doc. No. 1-2 at 3-10, 13, 17-18.] She alleges that as a result she was not called to work or paid, was pushed around and called a snitch by other inmates, had false chronos miscalculate her placement points, was threatened with a transfer, had a false RVR filed, was threatened with removal from the EOP, had her cell repeatedly searched, and was verbally harassed. [*Id*.]

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Plaintiff must allege a causal connection between the adverse action and the protected conduct, *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012), and conclusory allegations of retaliatory intent are insufficient to state a claim. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity).

Plaintiff alleges Defendant RJD Associate Warden J. Lewis personally threatened to transfer her to another prison for filing grievances and complaints regarding her job, pay, and staff misconduct. [Doc. No. 1-2 at 4-5.] Prison officials may not retaliate against prisoners for filing grievances. *Bruce v. Ylst*, 351 F.3d 1283, 1289-90 (9th Cir. 2003). Although it does not appear Plaintiff was transferred, prison officials may not explicitly threaten to transfer a prisoner in retaliation for their First Amendment protected activities. *See Gomez v. Vernon*, 255 F.3d 1118, 1127-28 (9th Cir. 2001) (holding that a prison official violated a prisoner's First Amendment rights by threatening to transfer him "because of his complaints about the administration of the library"—even though "the transfers never took place.") A threat of transfer alone can support a retaliation claim provided the threat caused a chilling effect on the inmate's First Amendment rights. *Id*. at 1127; *see also Brodheim v. Cry*, 584 F.3d 1262, 1266, 1270-72 (finding that a prison official's note "warning" an

- 8 -

inmate "to be careful what you write" or request on a grievance form combined with a later recommendation to transfer constituted potential retaliation). Accordingly, the allegations in the Complaint are sufficient to survive the "low threshold" of the screening required by 28 U.S.C. § 1915A(b) with respect to a retaliation claim against Defendant J. Lewis, who allegedly personally and repeatedly threatened to transfer Plaintiff if she did not stop filing grievances. *Wilhelm*, 680 F.3d at 1113.

*Defendants Wong and Amaya.* Plaintiff alleges she and several other inmates filed an internal affairs complaint accusing Wong, M. Lewis, Asfar, Amaya and John Does 1-12 of "being sexually inappropriate" with each other. [Doc. No. 1-2 at 17.] Plaintiff further alleges that when she reported to Wong that she was feeling suicidal, Wong retaliated for the internal affairs complaint by telling her: "I'm taking you to IDDTT to remove you from EOP, why didn't you mind your business, shut your mouth, but no you reported me & Amaya." [Doc. No. 1-2 at 17.] The allegations against Wong are therefore sufficient to survive the "low threshold" of the screening required by 28 U.S.C. § 1915A(b) with respect to a retaliation claim.

Relatedly, Plaintiff alleges Amaya searched her cell 19 times in August, 10 times in July, and 18 times in June, "so I could learn not to snitch." [*Id*.] Cell searches can be considered adverse actions. *See Cejas v. Paramo*, 2017 WL 1166288, at *6 (S.D. Cal. 2017) ("[A]lthough cell searches are a routine part of prison life, a cell search may nonetheless constitute an adverse action . . . if performed with a retaliatory motive and lacking a legitimate correctional goal.") (citation omitted). The allegations against Amaya are therefore sufficient to survive the "low threshold" of the screening required by 28 U.S.C. § 1915A(b) with respect to a retaliation claim.

The remaining allegations of retaliation in the Complaint, however, are too vague and conclusory to plausibly allege a retaliation claim against any other Defendant.

*Defendants Gomez and Garcia.* Plaintiff alleges that Gomez and Garcia acted with J. Lewis in threatening to transfer her and creating a false chrono, that Gomez "with retaliatory intent falsified the plaintiff's placement score," that J. Lewis and Gomez told

- 9 -

her that she should not have filed grievances reporting she was not getting paid and now that her "snitching has gotten staff in trouble" she "had to go," and that Cota told her that Lewis and Gomez told him not to correct her points. [Doc. No. 1-2 at 5-6, 10.] Unlike the specific allegations that J. Lewis personally threatened Plaintiff, these vague and conclusory allegations, lacking specifics as to when and how Gomez and Garcia acted, are insufficient to state a retaliation claim. *Pratt*, 65 F.3d at 808; *Iqbal,* 556 U.S. at 678 ("[C]onclusory statements, do not suffice [to state a § 1983 claim].")

*Defendants Asfar and Mercado.* Plaintiff alleges she "was issued a retaliatory false RVR" by Defendants Asfar and Mercado "for alleged behavior that could lead to violence and that plaintiff had requested a personal favor." [Doc. No. 1-2 at 5.] There are no factual allegations surrounding the issuance of the disciplinary charge, other than that it was dismissed, and no facts which plausibly allege that it was retaliation. These vague and conclusory allegations against Asfar and Mercado therefore fail to state a retaliation claim. *Pratt*, 65 F.3d at 808; *Iqbal,* 556 U.S. at 678.

*Defendants Sanchez, Tito, and De Velasco.* Plaintiff alleges that Sanchez, Tito, and De Velasco told her that her status as a transgender and EOP inmate was "incompatible" for work but not to worry about reporting to work as she would still be paid, but then she was not paid in retaliation for reporting that she was not being called for work. [Doc. No. 1-2 at 7-8.] She alleges they did not call her to work one day in October, that on identified days in October, November and December all workers but her were paid for not working, and that at unidentified times in "October 2023 to the end of January 2024 and in February and March 2024 the plaintiff was not called for work," yet she also states that she worked 156 hours in December and 154 hours in January. [*Id*. at 3, 5, 7.] Although J. Lewis ordered her to receive back pay, Plaintiff alleges in a conclusory manner that Sanchez, Tito and De Velasco had the trust office reverse the pay reimbursements without notice or cause based on a false and backdated chrono claiming she had not worked. [*Id*. at 8-10.] She also alleges Tito and De Velasco informed other workers that it was Plaintiff's grievance which stopped the practice of paying them without working, resulting in her being pushed

- 10 -

around and called a snitch. [*Id*. at 4.]  It is unclear from the Complaint whether and when Plaintiff was allowed to work and whether and when she received pay, and who among Sanchez, Tito and De Velasco took which alleged actions when, and how she knows they took those actions.  In addition to being vague and conclusory, the allegations against these Defendants are lumped together, making it difficult for each Defendant to understand their respective potential liability.  "As a general rule, when a pleading fails 'to allege what role each Defendant played in the alleged harm,' this 'makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations.'"  *Adobe Sys. Inc. v. Blue Source Grp. Inc*., 125 F.Supp.3d 945, 964 (N.D. Cal. 2015) (quoting *In re iPhone Application Litig*., 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011)).  "Accordingly, a complaint which 'lump(s) together . . . multiple defendants in one broad allegation fails to satisfy (the) notice requirement of Rule 8(a)(2).'"  *Id*. (quoting *Gen-Probe, Inc. v. Amoco Corp*., 926 F. Supp. 948, 961 (S.D. Cal. 1996) ("[C]onfusion of which claims apply to which defendants would require that the complaint be dismissed with leave to file an amended complaint.")).  The allegations against Sanchez, Tito and De Velasco fail to state a retaliation claim.  *Pratt*, 65 F.3d at 808; *Iqbal,* 556 U.S. at 678.

Accordingly, Plaintiff's First Amendment retaliation claim is dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim as to all Defendants except J. Lewis, Wang, and Amaya.

### 2. Eighth Amendment Claim

Plaintiff claims an Eighth Amendment cruel and unusual punishment violation based on being threatened, pushed around, and called a snitch by other inmate workers who had been told by Tito and De Velasco that she filed a grievance, and on being called "a fagging snitch" by Tito and De Velasco who told her "they didn't work with transgenders and crazy people in EOP."  [Doc. No. 1-2 at 4.]  She also alleges Cervantes, Flores, Morphin and Hernandez were obligated to report her hunger and water strike but refused to issue a strike chrono and that she and her cellmate had to go man down to get the chrono issued.  [*Id*. at 12-13.]  She went man down a second time with headaches and high blood pressure "but

25-cv-3779-CAB-BJW

had to refuse treatment" because Flores told her and her cellmate that if they received medical treatment or accepted transport to an outside hospital their property would be missing. [*Id*. at 14.] When she reported being suicidal and having injected cellblock cleaner, a John Doe laughed, and M. Lewis said: "I will bury you." [*Id*. at 18.]

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment,'" and requires that "a prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297, 302-03). The official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff has not plausibly alleged an Eighth Amendment claim based on the threats and vulgar and abusive language allegedly used by the Defendants because the mere making of threats or harassing comments does not give rise to a civil rights claim under § 1983. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (verbal harassment is not cognizable as a constitutional deprivation under § 1983), *amended by* 135 F.3d 1318 (9th Cir. 1998); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse is not constitutional deprivation under § 1983).

Plaintiff alleges she went man down to get medical treatment twice during the hunger and water strike, the first time to get the strike chrono issued and the second time because she felt weak with headaches and high blood pressure, but states that she had to refuse medical treatment on the second occasion because Flores told her and her cellmate that if they received medical treatment or accepted transport to an outside hospital "their property would be missing." [Doc. No. 1-2 at 12-14.] The allegations are vague regarding whether Plaintiff had a serious medical need, such as the type of medical care she needed, how long

25-cv-3779-CAB-BJW

it was withheld, and whether Flores knew Plaintiff had a serious medical need but was deliberately indifferent. *See Wilhelm*, 680 F.3d at 1122 (an Eighth Amendment violation can be shown where a failure to treat a serious medical need "could result in further significant injury or the unnecessary and wanton infliction of pain" and "the defendant's response to the need was deliberately indifferent."); *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain."); *see also Estelle v. Gamble*, 429 U.S. 97, 106, (1976) (an inadvertent failure to provide medical care, negligence or malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim).  Plaintiff's Eighth Amendment cruel and unusual punishment claim is therefore dismissed for failure to state a claim as to all Defendants pursuant to 28 U.S.C. § 1915A.

### 3.  Due Process Claim

Plaintiff alleges her rights to due process and fair notice were violated by all Defendants.  [Doc. No. 1-2 at 3.]  The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  To state a procedural due process claim, a plaintiff must allege (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (and) (3) lack of process.  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (cleaned up).

With respect to Plaintiff's allegation that a false disciplinary charge was brought against her, the conclusory allegations that a false RVR was filed and later dismissed are insufficient to satisfy either of those pleading requirements.  *Id.*; *see also Iqbal*, 556 U.S. at 678 (there must be more than "labels and conclusions" or "a formalistic recitation of the elements of a cause of action," because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.)  In

25-cv-3779-CAB-BJW

addition, there is no constitutionally guaranteed right to be free of a false disciplinary charge. *Murschel v. Paramo*, No. 3:17-CV-1142-BTM-AGS, 2018 WL 539159, at *5 (S.D. Cal. Jan. 22, 2018) (collecting cases supporting failure to state claim under § 1983 based on allegations that an RVR included false information)

To the extent Plaintiff intended to bring a due process claim based on her job or pay, the Complaint is unclear whether she was eventually paid or not, and whether, how often, or when she worked. In any case, "the Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment.'" *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) (quoting *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (per curiam)). Neither has Plaintiff stated a due process claim regarding the confiscation of pay for work she did or did not perform because California law provides adequate post-deprivation remedies for property deprivations. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (the deprivation of property "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if" the state "provides a suitable postdeprivation remedy."); *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) ("California law provides an adequate post-deprivation remedy for any property deprivations.") The reference to the Fifth Amendment's Takings Clause in the Complaint fails to state a claim because there are no allegations her pay was taken for public use. *See Ward v. Ryan*, 623 F.3d 807, 810, 813 (9th Cir. 2010) (noting that the Takings Clause prohibits the government from taking private property for public use without just compensation). To the extent Plaintiff attempts to state a claim arising from the denial of her inmate grievances she has also failed to state a due process claim because "[t]here is no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure.")

The claims alleging denial of due process and fair notice are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b).

- 14 -

25-cv-3779-CAB-BJW

### 4. Equal Protection Claim

Plaintiff claims all Defendants violated her right to equal protection in regard to her work, in falsifying the transfer chrono, and in connection to the hunger strike.  [Doc. No. 1-2 at 3, 18-19.]  "The Equal Protection Clause requires the State to treat all similarly situated people equally."  *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).  To state an equal protection claim, a member of a protected class must demonstrate that (1) she is a member of a protected class and (2) that a defendant acted with an intent or purpose to discriminate against her based upon membership in a protected class.  *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998).  Plaintiff has plausibly alleged she is a member of a protected class.  *See Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. Mar. 31, 2015) ("[D]iscrimination based on transgender status independently qualifies as a suspect classification under the Equal Protection Clause because transgender persons meet the indicia of a 'suspect' or 'quasi-suspect classification' identified by the Supreme Court."); *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011) (noting several circuits have held that "discrimination against a transgender individual because of her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender")  However, the Complaint is insufficient with respect to facts plausibly alleging which Defendant(s) acted with an intent to discriminate against her based on membership in a protected class.  In particularly, it is unclear as to Plaintiff's work and pay status and whether she was ever transferred, and there is no indication why she claims an equal protection violation arising from the hunger strike.  In addition, this claim "lump(s) together . . . multiple defendants in one broad allegation [and therefore] fails to satisfy (the) notice requirement of Rule 8(a)(2)."  *Gen-Probe, Inc.*, 926 F. Supp. at 961.

Plaintiff's equal protection claim is dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915A(b).

### 5. ADA and RA Claims

Plaintiff states that "she suffers from mental health depression, dissociative

- 15 -

25-cv-3779-CAB-BJW

personality, severe depression, PTSD, and has gender dysphoria, and wears correction vision Rx glasses and has glaucoma and hearing impairments," and that she is a transgender inmate with EOP and ADA disabilities. [Doc. No. 1-2 at 2-3.] She alleges that she was denied work based on her status as a transgender and EOP inmate and for missing work for mandatory medical and mental health appointments. [*Id.* at 2-4.]

In order to state a claim under the ADA or RA, Plaintiff must allege:

> (1) [s]he 'is an individual with a disability;' (2) [s]he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) [s]he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [her] disability.'

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007); *see also Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (noting that the elements of an RA claim are the same, with the additional requirement that the program at issue receive federal funds).

Title II of the ADA covers state prison inmates. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). To the extent Plaintiff intended to bring an ADA or RA claim against the individual Defendants she has failed to state a claim because the "ADA applies only to public entities." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[P]laintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the [RA].") Although Plaintiff names CDCR as a Defendant, Title II of the ADA does not apply to employment, and Title I, the portion of the statute that addresses employment discrimination, does not apply to a prisoner's employment within a correctional facility. *Zimmerman v. Oregon Dept. Of Justice*, 170 F.3d 1169, 1173 (9th Cir. 1999) ("Congress unambiguously expressed its intent for Title II not to apply to employment."); *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 907-08 (9th Cir. 2013) (prisoners are not "employees" for purposes of the ADA).

Accordingly, the allegations in the Complaint do not plausibly allege an ADA or RA claim against any individual Defendant, or against CDCR for failing to accommodate Plaintiff's disability with respect to her prison employment. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *O'Guinn*, 502 F.3d at 1060; *Duvall*, 260 F.3d at 1135; *Zimmerman*, 170 F.3d at 1173; *Castle*, 731 F.3d at 907-08.

Plaintiff's ADA and RA claims are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) as to all Defendants.

### 6. Remaining Claims

The remaining claims for "gender discrimination," "gender ADA violations," and the Seventh Amendment are entirely conclusory and without specific supporting factual allegations and therefore fail to state a claim upon which relief may be granted. *See Iqbal*, 556 U.S. at 678 (there must be more than "labels and conclusions" or "a formalistic recitation of the elements of a cause of action" to state a claim).

### D. Leave to Amend

In light of Plaintiff's pro se status, the Court grants leave to amend with respect to the dismissed claims. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quote marks omitted).

### E. Plaintiff's Options

Because the Court has determined that Plaintiff's First Amendment retaliation claims against Defendants J. Lewis, Wong, and Amaya survive the *sua sponte* screening process but the remaining claims against the remaining Defendants do not, Plaintiff is given the opportunity to (1) notify the Court of her intent to proceed only with the First Amendment retaliation claims in the Complaint against Defendants J. Lewis, Wong, and Amaya; or (2) file a First Amended Complaint that attempts to correct any or all of the pleading deficiencies identified in this Order.

///

- 17 -

## II.   CONCLUSION

Based on the foregoing, the Court:

1)   **DISMISSES** all claims against all Defendants in the Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1) with the exception of the First Amendment retaliation claims against Defendants J. Lewis, Wong, and Amaya.

2)   **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (1) file a Notice of Intent to Proceed only with the First Amendment retaliation claims against Defendants J. Lewis, Wong, and Amaya; or (2) file an Amended Complaint correcting any or all of the pleading deficiencies identified by the Court in this Order.  If Plaintiff chooses to file an amended pleading correcting the deficiencies outlined in this Order, the Amended Complaint must be complete in itself without reference to the original pleading.  Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived.  *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (claims which are not re-alleged in an amended pleading may be "considered waived if not repled")  The Amended Complaint must also conform to this District's rules regarding presentation and legibility.  *See* CivLR 5.1 (requiring that "[e]ach document filed . . . must be in English, plainly written, or typed in double space" and outlining specific font requirements for typed fonts).  The Court will reject an Amended Complaint that uses the nearly illegible font and handwriting used in the original complaint here.

It is **SO ORDERED**.

Dated: May 21, 2026

Hon. Cathy Ann Bencivengo
United States District Judge

- 18 -

25-cv-3779-CAB-BJW